UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GEORGE CAPLAN,
    Plaintiff,

v.                                                        CIVIL ACTION NO. 21-11555-NMG

UNKNOWN NUMBER OF
JOHN DOE TELEMARKETERS,
    Defendant.

ORDER ON PLAINTIFF, GEORGE CAPLAN'S, MOTION
TO COMMENCE EARLY LIMITED DISCOVERY TO IDENTIFY DEFENDANTS AND
<u>PRESERVE CALL RECORD EVIDENCE (#2)</u>.[1]

KELLEY, U.S.M.J.

On September 21, 2021, plaintiff George Caplan ("Caplan") filed a complaint alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by defendants "Unknown Telemarketers," who allegedly have made over two thousand telemarketing calls to Caplan's telephones in the past four years. Caplan seeks injunctive relief and damages. (#1 ¶¶ 3, 26-35.)

On the same date, Caplan moved under Fed. R. Civ. P. 26(d) for an order authorizing commencement of early discovery limited to identifying defendant-unknown telemarketers and to preserving evidence of telemarketing calls through the issuance of subpoenas to unspecified third-party telecommunications companies or platforms. (#2 at 4.)

For the reasons set forth below, Caplan's motion for early discovery is denied without prejudice to renewal in accordance with this order within thirty (30) days.

---

[1] This motion was referred to undersigned on September 29, 2021. (#5.)

I. <u>Motion</u>.

As factual support for his motion for early discovery, Caplan reiterates the allegations in his complaint. Relevant here,[2] he alleges that, in the past four years, he has received over two thousand telemarketing calls on his personal, residential landline telephone and that he has received an unidentified number of other telemarketing calls on his personal, residential wireless telephone. He alleges that the numbers for both his home and cell phones have long been listed on the national Do Not Call registry. He further alleges that an unidentified number of other telemarketing calls have been received on a personal, residential wireless telephone subscribed to him but used by his wife. He refers to the three numbers collectively as "the Numbers." (#2 at 2-3.) *Compare* #1 at ¶¶ 16-19.

Caplan denies consenting to receiving telemarketing calls on the Numbers. "Upon and belief (sic)," he alleges that the "Caller Identification Numbers" ("CID") were "spoofed" to disguise the true numbers used to make the illegal telemarketing calls. (#2 at 3.) *Compare* #1 at ¶¶ 20-21. The motion adds:

> On many occasions, Mr. Caplan interacted with telemarketers illegally calling the Numbers and asked the telemarketers to identify themselves. Time and time again, the telemarketers either terminated the call following Mr. Caplan's inquiry or provided Mr. Caplan with suspected fake names. Because the CID for these telemarketing calls were "spoofed," and because these telemarketers universally failed to identify themselves by their legal names as required by law, Mr. Caplan has been unable to identify the entities responsible for the over one thousand (sic) illegal telemarketing calls made to the Numbers over the past four years.

---

[2] Both Caplan's complaint and motion set forth legal conclusions about the TCPA and general factual allegations about the prevalence of telemarketing calls despite the passage of the TCPA. (##1 at ¶¶1, 7-15; 2 at 1-2.) Both also allege that "spoofed" telemarketing calls are used by scam artists and scofflaw telemarketers to manipulate telecommunications platforms to conceal their identities so they can bombard and dupe customers into answering. According to his complaint and motion, the Federal Communications Commission's chairman has described them as a "real threat" and estimates suggest that nearly half of all calls to cell phones are fraudulent. *See* ##1 ¶22; 2 at 3 (citations omitted).

(#2 at 3.) *Compare* #1 at ¶¶23-25.

As legal support for the motion, Caplan cites *Patrick Collins, Inc. v. Doe*, 286 F.R.D. 160 (D. Mass. 2012), which is an order issued by then Chief Magistrate Judge Sorokin in *Patrick Collins, Inc. v. Does 1-79*, #12-cv-10532-GAO, and *Patrick Collins, Inc. v. Does 1-36*, #12-cv-10758-GAO. He also cites *Discount Video Center, Inc. v. Doe*, 285 F.R.D. 161 (D. Mass. 2012), which is an order issued by then Chief Magistrate Judge Sorokin in *Discount Video Center, Inc. v. Does 1-29*, #12-cv-10805-NMG.

The motion adds:

> As set forth in the Complaint, over the past few years, Mr. Caplan has received over one thousand (sic) illegal telemarketing calls from entities who have refused to identify themselves and who have taken steps to alter, or spoof, the numbers from which they are calling, making it impossible for Mr. Caplan to identify the legal names of the entities illegally calling his phone numbers. For good cause shown, Mr. Caplan, accordingly, seeks leave from this Court to conduct early discovery to allow Mr. Caplan to send subpoenas to telecommunications companies who are believed to be associated with these illegal telemarketing calls for the sole purpose of preserving evidence and identifying the entities who are initiating illegal telemarketing calls to Mr. Caplan.

(#2 at 4.)

## II. Law.

Fed. R. Civ. P. 26(d) provides:

> A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

*Id*.

In a variety of contexts, judges in this district have recognized that plaintiffs may conduct discovery, including by serving third-party subpoenas, before the parties have conferred as required by Rule 26(f) upon a showing of "good cause." *See Momenta Pharmaceuticals, Inc. v.*

3

*Teva Pharmaceuticals Industries, Ltd.*, 765 F. Supp. 2d 87, 88 (D. Mass. 2011) (Gorton, D.J.) (to determine need for injunctive relief in patent infringement action) (citing, *inter alia*, *McCann v. Doe*, 460 F. Supp. 2d 259, 265 (D. Mass. 2006) (Tauro, D.J.) (to identify unknown defendant in defamation action)). *See also KPM Analytics North America v. Blue Sun Scientific, LLC*, #21-cv-10572-TSH, 2021 WL 2002581, *1 (D. Mass. May 19, 2021) (Hillman, D.J.) (to determine need for injunctive relief); *Viken Detection Corp. v. Doe*, #19-cv-12034-NMG, 2019 WL 5268725, *1 (D. Mass. Oct. 17, 2019) (Cabell, M.J.) (to identify unknown defendant). For "good cause," judges in this district have applied a "reasonableness" standard based on "all of the surrounding circumstances," including "the purpose of the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity." *Momenta*, 765 F. Supp. 2d at 88 (plaintiff did not show good cause under reasonableness standard) (citations omitted). *See KPM Analytics*, 2021 WL 2002581, *1 (plaintiff did show good cause under reasonableness standard).

The orders upon which Caplan relies – in *Patrick Collins, Inc. v. Does 1-79*, *Patrick Collins, Inc. v. Does 1-36*, and *Discount Video* – were issued by Judge Sorokin in three of the numerous similar copyright infringement actions brought in this district on behalf of adult film companies by the same attorney.[3] Generally, in those actions, plaintiffs sought permission to conduct early discovery by serving third-party subpoenas on Internet Service Providers ("ISPs") for information related to the subscribers of Internet Protocol ("IP") addresses to identify the unknown infringers who were alleged to have illegally reproduced and distributed adult films using

---

[3] *See SBO Pictures v. Does 1-41*, #12-cv-10804-FDS, 2012 WL 5464182, *1 n.1 (D. Mass. Nov. 5, 2012) (listing some examples of the similar cases). *See also Kick Ass Pictures, Inc. v. Does 1-25*, #12-cv-10810-MLW, 2013 WL 1497229, *1 (D. Mass. Jan. 4, 2013) (listing other examples, including *Discount Videos*). *See also, e.g.*, *Patrick Collins, Inc. v. Does 1-38*, #12-cv-10756-NMG.

4

the IP addresses. As in many of those actions, in *Patrick Collins, Inc. v. Does 1-79*, *Patrick Collins, Inc. v. Does 1-36*, and *Discount Video*, plaintiffs obtained permission to conduct such early limited discovery. *Patrick Collins, Inc. v. Does 1-79*, #12-cv-10532-GAO, #8 (April 12, 2012) (O'Toole, D.J.) (order granting plaintiff's first motion for early discovery); *Patrick Collins, Inc. v. Does 1-36*, #12-cv-10758-GAO, #8 (May 8, 2012) (O'Toole, D.J.) (order granting plaintiff's first motion for early discovery); *Discount Video*, #12-cv-10805-NMG, #7 (May 12, 2012) (Sorokin, C.M.J.) (order granting plaintiff's first motion for early discovery).[4]

Subsequently in *Patrick Collins, Inc. v. Does 1-79*, *Patrick Collins, Inc. v. Does 1-36*, and *Discount Video*, however, Judge Sorokin quashed all of the third-party subpoenas to ISPs[5] but invited plaintiffs to file renewed motions for early discovery, indicating that there was indeed good cause. *Patrick Collins, Inc.*, 286 F.R.D. at 163, 166, 168; *Discount Video*, 265 F.R.D. at 163, 166-167, 169. Judge Sorokin ordered that, "at a minimum," plaintiffs' renewed motions for early discovery must "explain how the proposed discovery pursuant to the rules of civil procedure will establish the identity of the Doe infringers or lead to sufficient information for Plaintiff to identify the Doe infringers such that the Plaintiff can seek leave to amend the Complaint to insert the names of the Doe defendants." *Patrick Collins, Inc.*, 286 F.R.D. at 166; *Discount Video*, 285 F.R.D. at 166-167.

---

[4] *See, e.g.*, *SBO Pictures v. Does 1-41*, #12-10804-FDS, #7 (June 4, 2012) (Tauro, D.J.) (order granting motion for early discovery); *Patrick Collins, Inc. v. Does 1-38*, #12-cv-10756-NMG, #8 (May 14, 2012) (Dein, M.J.) (order granting motion for early discovery). *But see, e.g.*, *Kick Ass Productions*, 2013 WL 1497229, *2-3 (order denying motion for early discovery without prejudice to re-filing upon resolution of joinder issues).

[5] The notices attached to the third-party subpoenas wrongly asserted that the subscribers for whom information was sought from the ISPs had already been sued when, in reality, plaintiffs intended to sue the infringers, who were not necessarily the same as the subscribers. *See Patrick Collins, Inc.*, 286 F.R.D. at 163-166; *Discount Video*, 285 F.R.D. at 163-166.

Thereafter, plaintiffs filed renewed motions for early discovery. But, in a consolidated order, Judge Sorokin denied them. *Patrick Collins, Inc. v. Does 1-79*, #12-cv-10532-GAO, #51 (Nov. 7, 2012) (Sorokin, C.M.J.) (order denying renewed motion for early discovery, #43, and to show cause); *Patrick Collins, Inc. v. Does 1-39*, #12-cv-10758-GAO, #51 (Nov. 7, 2012) (Sorokin, C.M.J.) (order denying renewed motion for early discovery, #37, and to show cause); *Discount Video*, #12-cv-10805-NMG, #51 (Nov. 7, 2012) (Sorokin, C.M.J.) (order denying renewed motion for early discovery, #43, and to show cause). In pertinent part, Judge Sorokin denied them because plaintiffs did not propose discovery plans tailored to identification of defendant-unknown infringers. *Id.* at 3, 5.

### III. Discussion.

As a threshold matter, in *Patrick Collins, Inc. v. Does 1-79*, *Patrick Collins, Inc. v. Does 1-36*, and *Discount Video*, plaintiffs moved for early discovery through issuance of third-party subpoenas to <u>specified</u> ISPs for information related to <u>specified</u> IP addresses. *Patrick Collins, Inc. v. Does 1-79*, #12-cv-10532-GAO, #8 (April 12, 2012) (O'Toole, D.J.) (order limiting early discovery as set forth in exhibit to complaint, which listed four ISPs and 79 IP addresses for 79 Does, *see* #1-1); *Patrick Collins, Inc. v. Does 1-36*, #12-cv-10758-GAO, #7 (May 8, 2012) (O'Toole, D.J.) (order limiting early discovery as set forth in exhibit to complaint, which listed five ISPs and 36 IP addresses for 36 Does, *see* #1-1); *Discount Video*, #12-cv-10805-NMG, #7 (May 8, 2012) (Sorokin, C.M.J.) (order limiting early discovery as set forth in exhibit to complaint, which listed four ISPs and 29 IP addresses for 29 Does, *see* #1-1).[6]

---

[6] *Accord SBO Pictures v. Does 1-41*, #12-10804-FDS, #7 (June 4, 2012) (Tauro, D.J.) (order limiting early discovery as set forth in exhibit to complaint); *Patrick Collins, Inc. v. Does 1-38*, #12-cv-107560-NMG, #8 (May 14, 2012) (Dein, M.J.) (same).

6

In his complaint and motion, Caplan does not identify any telecommunications company or platform. He does not identify any number, "spoofed" or otherwise, from which telemarketers were calling. He does not even identify the products that the telemarketers were purporting to sell. He is alleging that he received over two (or one) thousand calls in the past four years. (##1 ¶¶ 3, 16-18; 2 at 2-4.)[7] From his submissions, the court cannot tell which or how many telecommunications companies or platforms Caplan seeks permission to serve with third-party subpoenas in the hopes of identifying the presumably large number of telemarketers responsible for that large number of calls over that long span of time.[8]

The court also cannot tell how service of third-party subpoenas on telecommunications companies or platforms will identify the telemarketers responsible. Caplan merely asserts that, on many occasions, he asked the telemarketers to identify themselves and they hung up or gave supposed fake names and that because, upon information and belief, the CID for the calls was "spoofed," he has been unable to identify the legal names of the entities. *See* #2 at 4. He seeks permission to serve third-party subpoenas on telecommunications companies or platforms "who are believed to be associated" with the calls, *see id.*, but sets forth no basis for that belief and no

---

[7] The counts of Caplan's complaint do nothing to narrow either the number of allegedly unlawful calls or the time frame. *See*, *e.g.*, #1 ¶ 27 ("The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA…").

[8] These deficiencies readily distinguish this case from *Strange v. Smoothie Peddler*, #20-cv-12158-PBS, a TCPA action in which undersigned recently granted a motion for early discovery. *See Strange*, #20-cv-12158-PBS, #10 (Feb. 8, 2021) (Kelley, C.M.J.) (electronic order granting ex parte motion for limited discovery, #2). The *Strange* complaint explicitly identified the telecommunications company operating the mass texting platform on which the third-party subpoena would be served, as well as the company and products that the messages were promoting. The complaint involved messages from a handful of days, not years. (#1 ¶¶ 2, 7-11.) *Accord McCann*, 460 F. Supp. 2d at 262 (plaintiffs sought permission to serve GoDaddy.com and Domain by Proxy, Inc. with third-party subpoenas).

reason for the court to conclude that a telecommunications company or platform would even be able to provide the legal names for the entities in light of the "spoofing." "[A]t a minimum," the court expects that a motion for early discovery would "explain how the proposed discovery pursuant to the rules of civil procedure will establish the identity of the Doe [telemarketers] or lead to sufficient information for the Plaintiff to identify the Doe [telemarketers] such that the Plaintiff can seek leave to amend the Complaint to insert the names of the Doe defendants." *Patrick Collins, Inc.*, 286 F.R.D. at 166; *Discount Video*, 285 F.R.D. at 166-167. *See McMann*, 460 F. Supp. 2d at 263, 265 n.31 (court initially denied motion for early discovery, ordering plaintiff to show, by affidavit, that irreparable harm would result without early discovery and that reasonable attempt to identify culprit was made, requirements drawn from standard for ex parte temporary restraining order under Fed. R. Civ. P. 65).

Based on all of the surrounding circumstances, Caplan has not shown good cause and his motion for early discovery is denied. He may file a renewed motion for early discovery in accordance with this order. He must do so within thirty (30) days.

October 7, 2021                             /s/ M. PAGE KELLEY
                                            M. Page Kelley
                                            Chief United States Magistrate Judge