IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GEORGE CAPLAN, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action: 1:21cv1155 |
| UNKNOWN NUMBER OF JOHN DOE TELEMARKETERS | : | |
| Defendants. | : | |

## PLAINTIFF'S RENEWED MOTION TO COMMENCE
## EARLY LIMITED DISCOVERY

On October 7, 2021, the Court denied without prejudice Mr. Caplan's initial Motion to Commence Early Limited Discovery, and granted leave for Mr. Caplan to re-file within thirty days. *See* Dkt. #6. Mr. Caplan responds to the Court's directive as follows:

### BACKGROUND

**The Telephone Consumer Protection Act**

In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227). The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system to wireless numbers or using an artificial or prerecorded voice to wireless or landline numbers. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3). The TCPA also strictly regulates all

telemarketing calls, live and automated, to residential numbers listed on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(1); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014* ("DNC Order").

Despite the TCPA's strict prohibition against unlawful telemarketing, unwanted telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman). The FTC receives more complaints about unwanted calls than all other complaints combined. *See* Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016). In fiscal year 2019, the FTC received 5.4 million complaints about unwanted telemarketing calls. Of those complaints, 71 percent were about robocalls. Federal Trade Commission, *FTC Releases FY 2019 National Do Not Call Registry Data Book* (October 18, 2019), https://www.ftc.gov/news-events/press-releases/2019/10/ftc-releases-fy-2019-national-do-not-call-registry-data-book?utm_source=govdelivery.

## **FACTUAL ALLEGATIONS**[1]

Mr. Caplan is a seventy four year old retired engineer and teacher. He resides with his wife in Acton, Massachusetts. Over the past four years, Mr. Caplan has received over two thousand telemarketing calls on his personal and residential land line phone line, (978) 2**-**** ("Number 1") that has long been listed on the National Do Not Call Registry. Mr. Caplan received other telemarketing calls on his personal and residential wireless number (978) 4**-**** ("Number 2") that has long been listed on the National Do Not Call Registry. Other

---

[1] The following facts are detailed in the Declaration of George Caplan, attached at Exhibit 1.

telemarketing calls were received on a personal and residential wireless number (978) 4**-****
("Number 3"), subscribed to Mr. Caplan but used by his wife. Collectively, Number 1, Number
2, and Number 3 are referred to herein as "the Numbers."[2] Mr. Caplan never consented to
receive telemarketing calls on the Numbers.

Most of the telemarketing calls received by Mr. Caplan included Caller Identification Numbers ("CID") that were altered or "spoofed" to disguise the correct number from which the telemarketer was calling. *See* https://www.fcc.gov/spoofing (describing spoofing and the manipulation of CID to make it appear to a consumer the call at issue is coming from a local number, or from a company or government agency the consumer may trust). Spoofed telemarketing calls generated by scam artists or scofflaw telemarketers who manipulate telecommunications platforms to conceal their identities so they can bombard consumers' phones and dupe them into answering — are a scourge visited upon millions of Americans every day. The Federal Communications Commission's chairman has described them as "real threats to American consumers."[3] By some estimates, nearly half of all calls to cell phones are fraudulent.[4]

---

[2] In its Order (Dkt. #6), the Court noted that Mr. Caplan did not disclose the telecommunications carriers associated with the Numbers. The telecommunications carriers associated with the Numbers are Verizon, TracFone and Consumer Cellular.

[3] *See FTC and FCC Host Joint Policy Forum and Consumer Expo to Fight the Scourge of Illegal Robocalls*, FTC.GOV (March 7, 2018), https://www.ftc.gov/news-events/press-releases/ 2018/03/ftc-fcc-host-joint-policy-forum-consumer-expo-fight-scourge.

[4] Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018, 10:03 ET), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html.

In addition, on many occasions, Mr. Caplan interacted with telemarketers illegally calling the Numbers with spoofed CID and asked the telemarketers to identify themselves by name and phone number. Time and time again, the telemarketers either terminated the call following Mr. Caplan's inquiry, or provided Mr. Caplan with suspected fake names and phone numbers. Because the CID for these telemarketing calls were "spoofed," and because these telemarketers typically failed to identify themselves by their legal names as required by law, Mr. Caplan has been unable to identify the entities responsible for these calls. *See* Exhibit 1, Declaration of George Caplan.

Attached at Exhibit 2 is an excerpt of a spread-sheet that Mr. Caplan has maintained that documents the illegal telemarketing calls made to the Numbers since January of 2021. The spread-sheet also documents two calls from 2019 where the CID screen was spoofed to make it appear like Mr. Caplan was calling himself. The spread sheet details the date and time of the Illegal Calls (Columns A and B), the CID (Column C), the substantive nature of the call (Column D) and Mr. Caplan's notes as to the specific call (Column E).[5] Mr. Caplan seeks to identify all individuals and entities associated with the Illegal Calls and to hold them to account for their suspected violation of the TCPA.

---

[5] In its Order (Dkt. #6), the Court noted that Mr. Caplan had failed to identify the CID numbers that were allegedly spoofed and also failed to describe the products being offered by offending telemarketers. Column C of the attached excel details the spoofed CIDs associated with the Illegal Calls. Columns D and E detail the substance of the goods or services being sold on the offending telemarketing calls at issue.

# MR. CAPLAN INTENDS TO IDENTIFY TELEMARKETERS CALLING THE NUMBERS VIA TRACEBACK[6]

In a final effort to identify those telemarketers and scammers illegally calling the Numbers, Mr. Caplan now turns to the Court to allow him to issue subpoenas to the various telecommunication providers associated with the Illegal Calls so he can "traceback"[7] the calls to their origin. Each individual Illegal Call made to the Numbers began when a telemarketer (the "Telemarketer"), contracted with an originating voice provider (Originating Provider") to introduce the particular Illegal Call into the telecommunications system. The Illegal Call then traveled on a telecommunications journey, typically involving one or more intermediate carriers ("Intermediate Carrier"), before finally terminating with the voice providers associated with the

---

[6] In its Order (Dkt. #6), the Court noted that it could not tell from Mr. Caplan's filing how the service of third party subpoenas could identify the telemarketers responsible for the Illegal Calls. Mr. Caplan respectfully responds to the Court's query in this section of his brief.

[7] Traceback is the process of following the path of a call back to the point of origination. This is generally done by obtaining information from each voice service provider in the call chain regarding where they received the call. The scourge of robocalls and the use of traceback to identify illegal telemarketers is detailed within the Anti-Robocall Principles entered in 2019 between various Attorneys Generals and various telecommunications providers. *See* https://www.attorneygeneral.gov/wp-content/uploads/2019/08/2019-08-22-State-AGs-Providers-AntiRobocall-Principles-With-Signatories.pdf.

Numbers ("Terminating Providers").[8] The relationships between the various voice service providers along the telecommunications system is depicted below.



---

[8] The specific manner in which telemarketing calls are originated, travel through the telecommunications network, through the terminating provider and ultimately to the consumer is detailed in the US Telecom white paper entitled "How to Identify and Mitigate Illegal Robocalls," *See* https://www.ustelecom.org/research/how-to-identify-and-mitigate-illegal-robocalls/. The structure of the telecommunications system and the use of subpoenas to identify individuals and entities associated with illegal telemarketing is also detailed in the Industry Traceback Group Policies and Procedures. *See* https://www.ustelecom.org/wp-content/uploads/2021/01/ITG_Policies-and-Procedures_2021.pdf#:~:text=These%20Industry%20Traceback%20Group%20%28ITG%29%20Policies%20and%20Procedures,numerous%20voice%20service%20providers%20in%20a%20complex%20ecosystem.1

To identify the Telemarketers, and any other entities who may be legally responsible for the Illegal Calls, Mr. Caplan would first issue a subpoena to Verizon, TracFone and Consumer Cellular, the three Terminating Providers associated with the Numbers. The subpoena would list detailed information relating to the Illegal Calls, and would ask the Terminating Providers to identify the other voice provider(s) involved in the Illegal Calls to those particular Numbers. If the voice provider for any particular Illegal Call was an Intermediate Carrier, Mr. Caplan would then issue a subpoena to that Intermediate Carrier seeking the identity of the Originating Provider of the Illegal Call. Once the Originating Provider was identified, Mr. Caplan would issue a subpoena to that entity seeking the identity of the Telemarketer who retained the Originating Provider to transmit the Illegal Call at issue and introduce the Illegal Call to the telecommunications network. Mr. Caplan would then request that all entities associated with the Illegal Calls preserve evidence. Mr. Caplan would finally then initiate civil action(s) seeking to hold all entities associated with the Illegal Calls to account.[9]

## MR. CAPLAN HAS SHOWN GOOD CAUSE TO CONDUCT
## EARLY DISCOVERY

In a typical case, discovery cannot commence until all parties have been served and the Court has conducted a Rule 26(f) conference. *See* Fed.R.Civ.P. 26(f). Courts, however, have recognized an exception to this rule where the defendants have yet to be identified. *See* Fed.R.Civ.P. 26(d); *Patrick Collins, Inc. v. Doe*, 286 F.R.D. 160 * 9 (D. Mass. 2012); *Disc.*

---

[9] Attached at Exhibit 3, is a PowerPoint presentation recently submitted at the 2021 NAAG Robocall Virtual Summit describes further the telecommunications system relating to robocalls and the use of Traceback to identify individuals and entities involved in illegal telemarketing. *See also,* https://www.naag.org/issues/consumer-protection/consumer-protection-101/robocalls/

*Video Ctr., Inc. v. Doe,* 285 F.R.D. 161, 163 (D. Mass. 2012) (allowing early discovery for good cause shown to allow plaintiff to identify defendants that cannot be identified by other means). *See Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982)(recognizing the propriety of allowing John Doe suits in federal court where the identity of the unnamed party "can be discovered through discovery or through intervention of the court[.]"); *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013)("If the identity of any defendant is unknown, 'the plaintiff should be given an opportunity through discovery to identify the unknown defendants.'") (quoting *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980)); *Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250 (3d Cir. 2009) ("Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified."); *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011) ("A plaintiff who is unaware of the identity of the person who wronged her can . . . proceed against a 'John Doe' . . . when discovery is likely to reveal the identity of thecorrect defendant.").

Directly on point as to the appropriateness and importance of conducting early discovery to identify the parties responsible for making illegal telemarketing calls particularly where the calling parties had taken steps to conceal their identify by "spoofing" the CID feature on the plaintiff's phone, is *Mey v. John Doe Defendants,* Civil Action 5:19cv237, ND. W.Va). In *Mey*, the plaintiff was not able to identify the entities responsible for making illegal telemarketing calls to her phone number because they had "spoofed" the CID data. To identify the entities responsible for sending illegal telemarketing calls to her phone, Ms. Mey filed suit against John Doe defendants and sought leave from the Court to issue subpoenas to her voice provider prior to the Rule 26(f) Conference. *See Mey v. John Doe Defendant,* Civil Action 5:19cv237, ND. W.Va) ECF #10 ("Plaintiff's Motion for Leave to Serve Subpoenas Prior to

Rule 26(f) Conference) (October 11, 2019). Ms. Mey's request for early discovery was allowed. *See Mey v. John Doe Defendant,* Civil Action 5:19cv237, ND. W.Va), ECF #11, Order Granting Motion for Leave to Conduct Limited Discovery Via Subpoena Prior to 26(f) Conference (October 16, 2019). Ms. Mey then sent subpoena to the various voice providers associated with the illegal calls made to her phone, including the Terminating Provider, Intermediate Provider and the Originating Provider. After Ms. Mey identified all the entities allegedly responsible for the illegal telemarketing calls to her home, she amended her original complaint replacing the John Doe defendants with the actual names of the entities associated with the calls. Notably, Ms. Mey also named several voice providers themselves alleging that they also may be liable to transmitting illegal telemarketing calls. *See Mey v. All Access Telecom, Inc.*, Civil Action No. 5:19-cv-00237-JPB, 2021 U.S. Dist. LEXIS 80018 (N.D.W. Va. Apr. 23, 2021) (After Ms. Mey amends the complaint to add the now identified defendants, court denies motion to dismiss of voice providers who claimed they could not be held liable for illegal telemarketing calls under the TCPA).

      In 2021 alone, Mr. Caplan received hundreds of illegal telemarketing calls- many of which appear to be outright scams. His efforts to identify and hold these illegal actors to account, however, have been frustrated by the callers' refusal to identify themselves, or to disclose the phone numbers from which they were calling using "spoofing" tactics. Mr. Caplan has exhausted all other methods to identify the entities responsible for the Illegal Calls.

      Accordingly, for good cause shown, Mr. Caplan seeks leave from this Court to conduct early discovery to allow Mr. Caplan, through counsel, to send subpoenas to the telecommunications companies who are believed to be associated with the Illegal Calls

detailed in the spread sheet attached at Exhibit 2. Although the statute of limitations for a violation of the TCPA extends back four years, a period of time over which Mr. Caplan received over two thousand illegal telemarketing calls, Mr. Caplan limits the scope of early discovery to the select Illegal Calls made to the Numbers during 2021, and detailed in the spread-sheet attached at Exhibit 2. Finally, the Court should note that although the spread-sheet attached at Exhibit 2 lists hundreds of telemarketing calls, it is suspected that many of these calls are from the same originating source. For example, fifty-eight of the calls listed on Exhibit 2 are from an entity that calls itself "National Debt Relief." Similarly, eighty-eight of the calls relate to telemarketing for "Discover Credit." Fifteen of the calls relate to telemarketing calls purportedly from "Apple Support." An additional fifteen calls promote "Marriott Hotels." It is suspected that a significant number of the telemarketing calls listed on Exhibit 2 will be associated with the same telecommunications vendors, and ultimately the same Telemarketer.

## PRAYER FOR RELIEF

Accordingly, Mr. Caplan requests an Order from this Court authorizing the immediate commencement of limited discovery to third party voice providers that focuses solely on the identification of the individuals and entities associated with the making and transmission of the Illegal Calls to the Numbers since January of 2021, which are detailed on the spread-sheet attached at Exhibit 2, and to preserve evidence of such illegal calls. A proposed Order is attached as Exhibit 4.

PLAINTIFF,
By his attorney

/s/ Matthew P. McCue
Matthew P. McCue

The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mmccue@massattorneys.net

## **CERTIFICATE OF SERVICE**

I, hereby certify that on November 3, 2021, I served the foregoing through the Court's CM/ECF system, which sent notice to all counsel of record.

> */s/ Matthew P. McCue*
> Matthew P. McCue